## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## GREENEVILLE DIVISION

| | | |
|---|---|---|
| ROBERT EUBANKS AND | § | |
| | § | |
| TERESA R. EUBANKS, | § | |
| | § | CIVIL ACTION NO.2:15-CV-00154 |
| PLAINTIFF, | § | |
| V. | § | JURY DEMAND |
| | § | |
| PFIZER, INC. | § | |
| | § | |
| DEFENDANT. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Now come Plaintiffs Robert Eubanks and Teresa Eubanks by and through the undersigned counsel, for their Complaint against Pfizer Inc., as a direct and proximate result of Defendant's negligent and wrongful conduct in connection with the design, development, manufacturing, testing, packaging, promoting, marketing, distribution, labeling and/or sale of sildenafil citrate tablets sold under the brand name, Viagra (hereinafter "Viagra"), and allege as follows:

## PARTIES

1. Plaintiffs Robert Eubanks Teresa Eubanks are residents of Talbott, Tennessee, which is located in Hamblen County, Tennessee. At all times relevant herein, Plaintiffs were residents of the state of Tennessee.

2. Defendant, Pfizer, Inc. (hereinafter "Defendant") is a corporation organized and existing under the laws of the State of Delaware. Defendant maintains its principal place of business at 235 East 42nd Street, New York, New York 10017.

3. At all times mentioned herein, Defendant was engaged in interstate commerce and profited from the design, manufacture, marketing, distribution and/or sales of the brand name prescription drug Viagra.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over Defendant and this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00 exclusive of interest and costs, and because there is complete diversity of citizenship between Plaintiff and Defendant.

5. This court has personal jurisdiction over this Defendant because Defendant maintains significant contacts with this judicial district by virtue of conducting business within the district.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391. Plaintiff resides in this district. Furthermore, Defendant marketed, advertised, and distributed Viagra in this District.

7. In addition, Defendant received substantial compensation and profits from the sale of Viagra in this District and made material omissions and misrepresentations and breached warranties in this District.

## FACTUAL BACKGROUND

8. On March 27, 1998, the U.S. Food and Drug Administration ("FDA") approved a new drug application ("NDA") from Defendant for the manufacture and sale of sildenafil citrate.

---

9. Sildenafil citrate, sold under the brand name Viagra, is an oral tablet prescribed to men with erectile-dysfunction.

10. Viagra is part of the class of drugs called "Phosphodiesterase 5A Inhibitors" ("PDE5"), and is designed to prevent the destruction of Guanosine Monophosphate ("GMP") to allow smooth muscle relaxation and inflow of blood into the penis, helping to create an erection.

11. The National Institutes of Health estimates that erectile dysfunction affects as many as thirty million men in the United States.

12. Since Viagra's FDA approval in 1998, Defendant has engaged in a continuous, expensive and aggressive advertising campaign to market Viagra to men worldwide as a symbol of regaining and enhancing one's virility.

13. Defendant has engaged in increasingly aggressive marketing techniques and strategies to promote the use of Viagra in the face of increasing pharmaceutical competition. By means of demonstration, a 2004 article in The Chicago Tribune cited industry reports stating that Defendant spent "tens of millions of dollars each month on direct-to-consumer advertising [ ]."

14. Defendant has also been criticized by regulators, physicians and consumer groups for its attempts to target younger men in their advertising. Doctors and federal regulators stated that "such ads sen[t] a confusing message to patients who might really benefit from the drug."

15. In its 2013 Annual Report, Defendant stated that it accumulated revenue exceeding $1,800,000,000 from worldwide sales of Viagra.

16. Viagra holds approximately 45% of the U.S. market share for erectile dysfunction medications. 4

17.   Defendant estimates that Viagra has been prescribed to more than 35 million men worldwide. 5 In 2012 alone, physicians wrote approximately eight million prescriptions for Viagra.

18.   At all times material hereto, Defendant was engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling Viagra throughout the United States including in the state of Tennessee.

19.   Defendant is, and was at all relevant times, authorized to conduct business in the state of Tennessee.

20.   At all relevant times, Defendant has sold, distributed and marketed Viagra in Tennessee for use in the treatment of male impotence/erectile dysfunction.

21.   At all times relevant to this lawsuit, Defendant engaged in the business of researching, licensing, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging and/or advertising for sale or selling the prescription drug Viagra for use among the general public.

22.   For the duration of these efforts, Defendant directed its advertising efforts to consumers located across the nation, including consumers in Tennessee. These advertising efforts have resulted in sales of Viagra across Tennessee.

23.   Defendant expected, or should have expected, that its actions could or would have consequences in the State of Tennessee.

24.   Unbeknownst to most Viagra users, and not mentioned in the advertising from Defendant, recent studies have shown that the cellular activity providing the mechanism of action for Viagra may also cause the development and/or exacerbation of melanoma.

25. Several studies have linked the mechanism of action for Viagra to cell mutation cultivating melanomagenesis, or the creation of melanocytes which develop into melanoma.

26. In June 2014, a study ("the JAMA study") was published for the Journal of the American Medical Association Internal Medicine which, in light of the previous studies, sought to examine the direct relationship between sildenafil use and melanoma development in men in the United States.

27. Among 25,848 participants, the JAMA ·study reported that recent sildenafil users had a significantly elevated risk of invasive melanoma, with a "hazard ratio" of 1.84; in other words, the study participants who had recently used sildenafil exhibited an 84% increase in risk of developing or encouraging invasive melanoma. The study also found that if men had ever used Viagra, they had double the risk of developing melanoma compared to those who never used the drug.

28. Despite these significant findings, Defendant has made no efforts in its Viagra advertisements to warn users about the potential risk of developing melanoma that has been scientifically linked to its drug.

29. At all times mentioned, Defendant's officers and directors participated in, authorized, and directed the production and aggressive promotion of Viagra when they knew, or with the exercise of reasonable care should have known, of the risk of developing melanoma associated with Viagra use. In doing so, these officers and directors actively participated in the tortious conduct which resulted in the injuries suffered by many Viagra users, including Plaintiff.

30. Defendant purposefully downplayed, understated and ignored the melanoma-related health hazards and risks associated with using Viagra. Defendant also deceived potential Viagra users by relaying positive information through the press, including testimonials from retired, popular U.S. politicians, while downplaying known adverse and serious health effects.

31. Defendant concealed material information related to melanoma development from potential Viagra users.

32. In particular, in the warnings the company includes in its commercials, online and print advertisements, Defendant fails to mention any potential risk for melanoma development and/or exacerbation associated with Viagra use.

33. As a result of Defendant's advertising and marketing, and representations about its product, men in the United States pervasively seek out prescriptions for Viagra. If Robert Eubanks had known the risks and dangers associated with taking Viagra, Robert Eubanks would have elected not to take Viagra and, consequently, would not have experienced its serious side effects.

34. Robert Eubanks began treatment for erectile dysfunction in 2000, when his physician recommended that he begin taking Viagra.

35. Robert Eubanks continued to take the drug regularly until 2013, before he switched to the drug Cialis.

36. On November 12th, 2012, Mr. Eubanks was diagnosed with Melanoma on his back, and later the Melanoma spread to his thyroid and lymph node under his left arm.

37. Had Defendant properly disclosed the melanoma-related risks associated with Viagra, Robert Eubanks would have avoided the risk of developing melanoma by not using Viagra at all, severely limiting the dosage and length of its use, and more closely monitoring the degree to which the Viagra was adversely affecting his health.

38. As a direct and proximate result of Defendant's negligence and wrongful conduct, and the unreasonably dangerous and defective characteristics of the drug Viagra; Robert Eubanks would not have had to have surgical removal of the cancerous area.

## CAUSES OF ACTION

## COUNT I: NEGLIGENCE

39. Plaintiff restates each and every preceding allegation of this Complaint and incorporates each by reference as though set forth in full herein.

40. At all times relevant hereto, Defendant had a duty to individuals, including Plaintiff, to exercise reasonable and ordinary care and properly manufacture, design, formulate, compound, test, produce, process, assemble, inspect, research, distribute, market, label, package, distribute, prepare for use, sell, prescribe and adequately warn of the risks and dangers associated with the use of Viagra.

41. At all times relevant hereto, Defendant manufactured, designed, formulated, distributed, compounded, produced, processed, assembled, inspected, distributed, marketed, labeled, packaged, prepared for use and sold Viagra while disregarding the fact that the foreseeable harm presented by the drug greatly outweighed the benefits it provided to users like Mr. Eubanks.

42. At all times relevant hereto, Defendant failed to adequately test for and warn of the risks and dangers associated with the use of Viagra.

43. Defendant breached its duty of care and was negligent as described herein in the design, manufacture, labeling, warning, instruction, training, selling, marketing and distribution of Viagra in one or more of the following respects:

a. Failing to design Viagra so as to avoid an unreasonable risk of harm to individuals who ingested Viagra, including Mr. Eubanks;

b. Failing to manufacture Viagra so as to avoid an unreasonable risk of harm to individuals who ingested Viagra, including Mr. Eubanks;

c. Failing to use reasonable care in the testing of Viagra so as to avoid an unreasonable risk of harm to individuals who ingested Viagra, including Mr. Eubanks;

d. Failing to use reasonable care in inspecting Viagra so as to avoid unreasonable risk of harm to individuals who ingested Viagra, including Mr. Eubanks;

e. Failing to use reasonable care in training its employees and health care providers related to the use of Viagra so as to avoid unreasonable risk of harm to individuals who ingested Viagra, including Mr. Eubanks;

f. Failing to use reasonable care in instructing and/or warning health care providers, the FDA, and the public as set forth herein of risks associated with Viagra, especially the risk of developing melanoma, so as to avoid unreasonable risks of harm to individuals who ingested Viagra, including Plaintiff;

g. Failing to use reasonable care in marketing and promoting Viagra, so as to avoid unreasonable risk of harm to individuals who ingested Viagra, including Plaintiff; and

h. Otherwise negligently or carelessly designing, manufacturing, marketing, distributing, warning, labeling studying, testing, or selling Viagra.

44.    Defendant further breached its duty of care and was negligent by failing to conduct post-market vigilance or surveillance and by:

a. Failing to monitor or act on findings in the scientific and medical literature regarding individuals who developed melanoma after ingesting or while ingesting Viagra; and

b. Failing to monitor or investigate and evaluate reports in the FDA adverse event databases for their potential significance for use of Viagra, including the incidence and development of melanoma during or after ingestion of Viagra.

45.    Despite the fact that Pfizer, Inc. knew or should have known that Viagra caused unreasonably dangerous side effects, Defendant continued to aggressively market Viagra to consumers including Robert Eubanks when there were safer alternative methods of treating erectile dysfunction than taking Viagra.

46.    Defendant knew or should have known that consumers such as Robert Eubanks would foreseeably suffer injury as a result of the company's failure to exercise ordinary care while developing, marketing, and/or selling Viagra.

47.    Defendant's negligence proximately caused the injuries, harm and economic loss which Plaintiff has and will continue to suffer.

## COUNT II: STRICT LIABILITY

48. Plaintiff restates each and every preceding allegation of this Complaint and incorporate each by reference as though set forth in full herein.

49. Viagra was designed, manufactured, marketed, promoted, sold and introduced into the stream of interstate commerce by Defendant, including in the State of Tennessee.

50. Viagra and its warnings and instructions were defective and unreasonably dangerous to the user or consumer.

51. The nature and magnitude of the risk of harm associated with the design of Viagra, particularly the risk of developing and/or exacerbating the spread of cancerous cells in the product's user, is significant in light of the drug's intended and reasonably foreseeable use.

52. Specifically, the ingestion of Viagra significantly increases the user's risk of developing melanoma and/or exacerbating cancer-related conditions already present in the user's cellular composition.

53. In developing, marketing, and selling Viagra, it was both technically and economically feasible for Defendant to develop an alternative design which would either eliminate or substantially reduce the significant risk of developing melanoma presented by the drug's current design.

54. It was both technologically and economically feasible for Defendant to develop an alternative product which was safer in light of its intended or reasonably foreseeable use.

55. Users like Mr. Eubanks were not aware of the risks associated with Viagra through warnings, general knowledge or other sources of information provided to them by Defendant, but

Defendant knew or should have known of the melanoma-related risks associated with Viagra which were present even when the drug was used as instructed.

56. Viagra and its warnings, instructions, and packaging were· expected to and did reach Mr. Eubanks and his physician without substantial change in the condition in which Viagra was sold.

57. Mr. Eubanks used Viagra in substantially the same condition it was in when it left the control of Defendant. If any changes or modifications were made to the product after it left the custody and control of Defendant, such changes or modifications were foreseeable by Defendant.

58. Neither Plaintiff nor his healthcare providers misused or materially altered the Viagra prior to his use of the product.

59. The defective condition of Viagra includes, but is not limited to, defects as follows:

a. Improper instructions and warnings regarding the use of Viagra and its risks and benefits;

b. Failure to adequately and properly warn of the increased risk of developing melanoma with recent Viagra use;

c. Failure to adequately and properly warn of the increased risk of developing melanoma with every Viagra use;

d. Failure to provide any information regarding the link between Viagra use and increased risk of melanoma anywhere in the product literature of information provided to Mr. Eubanks or his healthcare providers;

e. Failure to adequately and properly warn of the increased risk of permanent injury associated with melanoma with Viagra use;

f. Failure to adequately and properly warn of the increased risk of death due to melanoma with Viagra use;

g. Failure to provide any information regarding the lack of testing regarding the link between Viagra use and increased risk of melanoma;

h. Failure to provide information regarding the risks and benefits of using or prescribing Viagra for erectile dysfunction given the increased risk of melanoma, permanent injury and death;

i. Design and/or manufacture of Viagra by using improper ingredients;·

j. Design and/or manufacture of Viagra by using incompatible ingredients;

k. Failure to recall Viagra upon learning that its design features, warnings and/or instructions rendered Viagra unsafe to users;

l. Failure to take reasonable and necessary steps to design, test, and/or manufacture Viagra;

m. Selection and/or use of ingredients and/or other components not for their intended use;

n. Failure to adequately and properly test Viagra and/or all of its ingredients; and

o. Other defects as may be learned through discovery.

60. Due to the defects described herein, Viagra is inherently dangerous and defective, unfit and unsafe for its intended and reasonably foreseeable uses, and does not meet or perform to the expectations of patients and their health care providers.

61. The melanoma related risks associated with Viagra rendered Viagra unreasonably dangerous or far more dangerous than a reasonably prudent consumer or healthcare provider would expect when such a product was used in an intended and/or foreseeable manner.

62. As Defendant chose to distribute Viagra without adequate warnings as to the product's dangers and defects, Defendant's conduct shows a reckless disregard for the safety of individuals ingesting Viagra, such as Robert Eubanks.

63. Viagra creates risks to the health and safety of the patients that are far more significant and devastating than the risks posed by other products and procedures available to treat the corresponding medical conditions, and which far outweigh the utility of Viagra.

64. Defendant has intentionally and recklessly manufactured Viagra with wanton and willful disregard for the rights and health of Mr. Eubanks and others, and with malice, placing their economic interests above the health and safety of Mr. Eubanks and others.

65. One or more of Viagra's defective conditions played a substantial role in causing Mr. Eubank's injuries.

66. As a direct and proximate result of one or more of Defendant's wrongful acts or omissions, Plaintiff suffered serious injury, harm damages, and economic and non economic loss.

## COUNT III: BREACH OF IMPLIED WARRANTY

67. Plaintiff restates each and every preceding allegation of this Complaint and incorporates each by reference as though set forth in full herein.

68. Robert Eubanks used Viagra in substantially the same condition it was when it left the control of Defendant. If any changes or modifications were made to the product after it left the custody and control of Defendant. If any changes or modifications were made to the product after it left the custody and control of Defendant, such changes or modifications were foreseeable by Defendant.

69. Prior to the time that Plaintiff used Viagra; Defendant implicitly warranted to Robert Eubanks and his healthcare providers that Viagra was of merchantable quality, safe to use, and fit for the use for which it was intended.

70. Plaintiff was unskilled in the research, design and manufacture of erectile dysfunction medications, and therefore reasonably relied entirely on the skill, judgment and implied warranty of Defendant in deciding to use Viagra.

71. Viagra was neither safe for its intended use nor of merchantable quality, as had been implicitly warranted by Defendant, in that Viagra has dangerous propensities when used as intended and will cause severe injuries to users.

72. Specifically, the ingestion of Viagra significantly increases the user's risk of developing melanoma and/or exacerbating cancer related conditions already present in the user's cellular composition.

73. At all relevant times. Defendant intended that Viagra be used for the purposes and in the manner that Plaintiff or his physicians in fact used and Defendant impliedly warranted each

product to be of merchantable quality, safe and fit for such use, even though it was not adequately tested.

74. Defendant was aware that consumers, including Plaintiff or his physicians, would prescribe Viagra in the manner directed by the instructions for use; which is to say that Robert Eubanks was a foreseeable user of Viagra.

75. Plaintiff and/or his physicians were at all relevant times in privity with Defendant.

76. Viagra was expected to reach and did in fact reach consumers, including Plaintiff or his physicians, without substantial change in the condition in which it was manufactured and sold by Defendant.

77. Defendant breached various implied warranties with respect to Viagra, including, but not limited to, the following particulars:

a. Defendant represented through its labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions that Viagra was safe and fraudulently withheld and concealed information about the substantial risks of melanoma and potential death associated with using Viagra; and

b. Defendant represented that Viagra was safe, and/or safer that other alternative treatment and that complications were rare, and frequently concealed information, which demonstrated that Viagra was not as safe or safer than, alternatives available on the market.

78. In reliance upon Defendant's implied warranty, Plaintiff used Viagra as prescribed and in the foreseeable manner normally intended, recommended, promoted, and marketed by Defendant.

79.    As a direct and proximate result of the breach of warranty committed by Defendant, Plaintiff suffered serious injury, harm, damages, and economic and non-economic loss.

## COUNT IV: BREACH OF EXPRESS WARRANTY

80.    Plaintiff restates each and every preceding allegation of this Complaint and incorporates each by reference as though set forth in full herein.

81.    At all relevant times, Defendant intended that Viagra be used in the manner that Plaintiff in fact used it and Defendant expressly warranted that Viagra was safe and fit for use by consumers, that Viagra was of merchantable quality, that its side effects were minimal and comparable to other erectile dysfunction treatments, and that it was adequately tested and fit for their intended use.

82.    At all relevant times, Defendant expressly represented and warranted to Plaintiff and his healthcare providers, by and through statements made by Defendant or their authorized agents or sales representatives, orally and in publications, package inserts and other written materials intended for physicians, medical patients and the general public, that Viagra is safe, effective, and proper for its intended use.

83.    At all relevant times, Defendant was aware that consumers, including Plaintiff would use Viagra, in other words, Plaintiff was a foreseeable user of Viagra.

84.    Plaintiff and/or his prescribing physicians were at all relevant times in privity with Defendant.

85.     Viagra expected to reach and did in fact reach consumers, including Plaintiff and his physicians, without substantial change in the condition in which it was manufactured and sold by Defendant.

86.     Defendant breached various express warranties with respect to Viagra including the following particulars:

a. Defendant represented to Plaintiff and his physicians and healthcare providers through its labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions that Viagra was safe and fraudulently withheld and concealed information about the substantial risks of melanoma and/or death associated with using Viagra; and

b. Defendant represented to Plaintiff and his physicians and healthcare providers that Viagra was as safe and fraudulently concealed information, which demonstrated that Viagra was not safer than alternatives available on the market.

87.     The warranties expressly made by Defendant through its marketing and labeling were false in that Viagra is unsafe and unfit for its intended use.

88.     Plaintiff relied on the skill, judgment, representations, and express warranties of Defendant in deciding to purchase and use Viagra.

89.     In reliance upon Defendant's express warranties, Plaintiff used Viagra as prescribed and directed, and therefore, in the foreseeable manner normally intended, recommended, promoted, and marketed by Defendant.

90.     At the time of making such express warranties, Defendant knew or should have known that Viagra does not conform to these express representations because Viagra was not safe and had

numerous side effects that Defendant did not accurately warn about, thus making Viagra unreasonably unsafe for its intended purpose.

91. Members of the medical community, physicians and other healthcare professionals, as well as Plaintiff and the general public relied upon the representations and warranties of Defendant in connection with the use recommendation, description, and/or dispensing of Viagra.

92. Defendant breached its express warranties to Plaintiff in that Viagra was not of merchantable quality, safe and fit for its intended uses, nor was it adequately tested.

93. As a direct and proximate result of the breach of express warranty by Defendant, Plaintiff suffered serious injury, harm, damages, and economic and non economic loss.

## COUNT V: NEGLIGENT MISREPRESENTATION

94. Plaintiff restates each and every preceding allegation of this Complaint and incorporates each by reference as though set forth in full herein.

95. From the time the company first marketed and distributed Viagra until the present, Defendant made representations to Plaintiff, his healthcare providers, and the general public that Viagra was safe and fit for human consumption.

96. Defendant made representations regarding the safety of consuming Viagra without any reasonable ground for believing such representations to be true.

97. Representations concerning Viagra's safety and fitness for human consumption were made directly by Defendant or its sales representatives and other authorized agents, and in publications and other written materials directed to physicians, medical patients and the public, with the intention of promotion of prescribing, purchasing and using of Viagra.

98. The representations by Defendant were false, in that Viagra is not safe or fit for human consumption; using Viagra is hazardous to health; and Viagra has a propensity to cause serious injuries, including those suffered by Plaintiff, to its users.

99. Plaintiff relied on the misrepresentations made by Defendant in purchasing and using Viagra.

100. Plaintiff's reliance on Defendant's misrepresentations was justified because such misrepresentations were made by entities that were in a position to know of and disclose any potentially harmful information concerning the use of Viagra.

101. If Plaintiff had known of the information concealed by Defendant regarding the melanoma-related risks posed by Viagra, Plaintiff would not have purchased and subsequently used Viagra.

102. As a direct and proximate result of Defendant's misrepresentations, Plaintiff suffered serious injury, harm, damages, and economic and non-economic loss.

## COUNT VI: FRAUDULENT CONCEALMENT

103. Plaintiff restates each and every preceding allegation of this Complaint and incorporates each by reference as though set forth in full herein.

104. Defendant fraudulently withheld and concealed information about the substantial risks of using Viagra by representing through Viagra's labeling, advertising, marketing materials, detail persons, sales representatives, seminar presentations, publications, notice letters, and regulatory submissions that Viagra was safe.

105.   Defendant fraudulently withheld and concealed information which, demonstrated that Viagra was not safer than other erectile dysfunction treatments available on the market, and instead represented that Viagra was safer than other alternative medications.

106.   Defendant had access to material facts and information concerning the unreasonable risk of developing and/or exacerbating the spread of cancerous cells posed by using Viagra.

107.   The concealment of information by Defendant about the risks posed by Viagra use was intentional and conducted with awareness that the company's actual representations were false.

108.   Defendant's concealment of the risks associated with using Viagra and dissemination of untrue information to the contrary was conducted with the intent that healthcare providers would prescribe, and patients would subsequently purchase and use, Viagra.

109.   Plaintiff and his healthcare providers relied upon Defendant's misrepresentations and were unaware of the substantial risk of Viagra which Defendant concealed from the public.

110.   In relying on Defendant's misrepresentations, and unaware of Defendant's concealment of information regarding the risk posed by Viagra, Plaintiff purchased and used Viagra.

111.   Plaintiff would not have purchased or used Viagra if he had been aware of the fact of Defendant's concealment of harmful information and/or dissemination of misrepresentations that Viagra was safe and fit for human consumption.

112.   As a result of the foregoing fraudulent concealment by Defendant, Plaintiff suffered serious injury, harm, damages, and economic and non-economic loss.

## <u>COUNT VII: LOSS OF CONSORTIUM</u>

113.   Plaintiff restates each and every preceding allegation of this Complaint and incorporates each by reference as though set forth in full herein.

114.   At all relevant times hereto, Plaintiff Wife was spouse of Plaintiff, Robert Eubanks.

115.   For the reasons set forth herein, Plaintiff has necessarily paid and has become liable to pay for medical aid; treatment, monitoring, medications, and other expenditures as a proximate result of Defendant's misconduct.

116.   For the reasons set forth herein, Plaintiff has suffered the loss of her loved one's support, companionship, services, society, love and affection.

117.   Plaintiff suffered great emotional pain and mental anguish.

118.   As a direct and proximate result of Defendant's wrongful conduct, Plaintiff sustained severe emotional distress, economic losses and other damages-for which she is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

119.   Defendants are liable to Plaintiff, Wife, for all general, special and equitable relief to which they are entitled by law.

## REQUESTED RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment against Defendant as follows:

1. For compensatory damages requested according to proof;

2. For all applicable statutory damages of the state whose laws will govern this action;

3. For an award of attorney's fees and costs;

4. For prejudgment interest and costs of suit;

5. For restitution and disgorgement of profits; and

6. For such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all counts and as to all issues.

Dated: June 1, 2015

BY:     /s/ Hudson T. Ellis
        Hudson T. Ellis (TBPR #028330)
        (*Local Counsel for Plaintiff*)

        **ERIC BUCHANAN & ASSOCIATES, PLLC**
        414 McCallie Avenue
        Chattanooga, TN 37402
        (423) 634-2506
        FAX: (423) 634-2505
        ellish@buchanandisability.com


        /s/Matthew R. McCarley  (*Pro Hac Vice*) (*Motion
        to be filed at later date*)
        Matthew R. McCarley
        State Bar No. 24041426
        mccarley@fnlawfirm.com

        **FEARS | NACHAWATI, PLLC**
        4925 Greenville Ave., Suite 715
        Dallas, Texas 75206
        Tel. (214) 890 – 0711
        Fax (214) 890 – 0712

        ATTORNEYS FOR PLAINTIFFS ROBERT
        EUBANKS AND WIFE